UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

JESSE LEE HUDSON,

          Plaintiff,

    v.

ANDREW SAUL,

          Defendant.

Case No.  19-cv-00337-RMI

**ORDER**

Re: Dkt. Nos. 18, 24

United States District Court
Northern District of California

      Plaintiff, Jesse Lee Hudson, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for supplemental security income under Title XVI of the Social Security Act.  Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 13), and both parties have moved for summary judgment (dkts. 18 & 24). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

      The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The phrase "substantial evidence" appears throughout administrative law and direct courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

1    Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

2    adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

3    197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

4    determining whether the Commissioner's findings are supported by substantial evidence," a

5    district court must review the administrative record as a whole, considering "both the evidence

6    that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.*

7    *Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

8    evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

9    679 (9th Cir. 2005).

## PROCEDURAL HISTORY

11        On March 25, 2015, Plaintiff filed an application for supplemental security income,

12   alleging an onset date of March 1, 2015. *See* Administrative Record "*AR*" at 17.[1] The ALJ denied

13   the application on December 7, 2017. *Id*. at 28. The Appeals Council denied Plaintiff's request for

14   review on November 16, 2018. *Id*. at 1-3.

## SUMMARY OF THE RELEVANT EVIDENCE

16        When Plaintiff was only 10 years old, his father either slipped and fell, or jumped, from a

17   building and died. *Id*. at 583. Thereafter, he was primarily raised by his mother who suffered from

18   mental illness and received Social Security disability payments; and, perhaps due to his mother's

19   mental illness, Plaintiff's childhood was marked with corporal discipline in the form of being

20   whipped with a belt. *Id*. Plaintiff continued to experience various forms of trauma including

21   witnessing the shooting and death of his cousin, as well as discovering the dead body of his close

22   friend who had died of a drug overdose. *Id*. at 594. Consequently, Plaintiff began to have

23   difficulty sleeping at night due to persistent nightmares and an overwhelming sense of fear which

24   caused him to not want to leave the house. *Id*.

25        School was always a source of great difficulty for Plaintiff who was made to repeat a grade

26   in middle school. *Id*. at 584. After dropping out of high school, Plaintiff has been mostly

27

28   _____

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of
attachments to Docket Entry #15. *See* (dkts. 15-1 through 15-12).

2

United States District Court
Northern District of California

unemployed with the exception of a few short-term positions working security or as part of a landscaping crew. *Id*. Now 39 years old, he has never lived independently, and aside from periods of living with his mother and sisters, Plaintiff has experienced periods of homelessness during which he would typically sleep in a park. *Id*. During his teenage years, Plaintiff started using alcohol and marijuana to excess; later, his substance abuse would mature and expand to include cocaine, prescription opiates and sleeping pills, as well as heroin. *Id*. at 584-85. Plaintiff's dependency on these various substances eventually led to a number of brushes with the law – in that he was arrested while in possession of narcotics – resulting in his incarceration at the Santa Rita jail. *Id*. at 585.

In early 2015, Plaintiff's only idea for how to cope with the death of a close friend was to commit suicide by stepping in front of a bus. *Id*. Additionally, Plaintiff has been the victim of teasing and bullying to such an extent that he has acknowledged occasional thoughts of harming others; specifically, he has experienced thoughts of shooting people who have bullied him in the past, though he has denied having access to any firearms or other weapons. *Id*. Since early childhood, Plaintiff has experienced symptoms of depression including disinterest in most activities, anxiety, suicidal ideations, oversleeping, and insomnia. *Id*. In addition to symptoms of depression, Plaintiff has also reported experiencing auditory hallucinations in the form of voices that speak to him. *Id*. Sometimes these voices merely encourage him to get his life together; however, at other times, the voices exasperate Plaintiff's already heightened paranoia by telling him that people are staring at him or that he is being watched and followed. *Id*. Plaintiff's heightened paranoia, combined with the auditory hallucinations, have led him to experience discomfort in the company of others as well as causing him to distrust people. *Id*.

The medical evidence in the record pertaining to Plaintiff's mental health is paltry. In 2015, as part of the process of his application for disability, Plaintiff was referred to two consultative evaluations by psychologists (based on referrals by his attorney and the state disability agency respectively) as well as a consultative internal medicine evaluation. The first examination was performed by Lisa Kalich, Psy.D., and consisted of a review of Plaintiff's available medical records, a clinical interview and assessment, as well as the administration of a

United States District Court
Northern District of California

battery of diagnostic instruments geared towards evaluating Plaintiff's cognitive functioning and the nature and extent of his depressive disorder. *Id*. at 583-589. During the evaluation, Dr. Kalich found that Plaintiff exhibited a depressed mood and flat affect, neither of which varied much during the assessment. *Id*. at 586. To determine the state of Plaintiff's cognitive functioning, Dr. Kalich administered the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV"), during which Plaintiff was intermittently reduced to crying while explaining only that he was worried that he would not be able to solve the problems correctly. *Id*. While acknowledging persistent feelings of depression and current suicidal ideations, Plaintiff denied having formed any plans or intentions to hurt himself. *Id*. As to his cognitive functioning, Dr. Kalich's administration of the WAIS-IV yielded a full scale IQ score of 74, placing him in the range of borderline intellectual functioning and ranking him in the bottom 4% of individuals in his age range. *Id*. In addition to the WAIS-IV, Dr. Kalich also administered the Beck Depression Inventory – Second Edition ("BDI-II") and found that Plaintiff's symptoms are consistent with severe depression and that Plaintiff's thought process and content is dominated with feeling sad all the time, seeing himself as a total failure, persistent disappointment in himself, blaming himself for anything bad that might happen, frequent crying, feelings of worthlessness, persistent fatigue, and the inability to make decisions. *Id*. at 587. In the end, Dr. Kalich diagnosed Plaintiff as suffering from a recurrent and severe case of major depressive disorder with psychotic features, and noted that during the interview, Plaintiff's symptoms appeared evident due to his presentation and his uncontrollable sobbing. *Id*. Importantly, Dr. Kalich also noted that "[a]ccompanying his depressive symptoms are psychotic symptoms including auditory hallucinations and paranoia." *Id*.

As to Plaintiff's work-related abilities, Dr. Kalich opined that he experiences marked impairment with regards to his activities of daily living, and that "[d]ue to the severity of Mr. Hudson's symptoms, it is unlikely that he would be able to attend work regularly . . . [given that he] appeared overwhelmed and became tearful when completing the Block Design subtest, a[] relatively simple and non-threatening task." *Id*. at 588. She also opined that Plaintiff's psychotic symptoms likely interfere with his ability to relate to others as well as rendering it difficult for him to concentrate due to the existence of auditory hallucinations and paranoia. *Id*. Dr. Kalich then

1    added that Plaintiff's vulnerable emotional state, and his numerous episodes of decompensation,

2    "were a factor in his inability to maintain employment." *Id*.

3         A few months later, Plaintiff was referred to the Pacific Health Clinic in Oakland,

4    California, where he was evaluated by Aparna Dixit, Psy.D., for a second consultative

5    examination. *Id*. at 590-92. Dr. Dixit did not administer any testing and her evaluation consisted of

6    reviewing Dr. Kalich's report, as well as a clinical interview and examination of Plaintiff. *Id*. at

7    590. During the mental status evaluation, Dr. Dixit noted that Plaintiff exhibited signs of

8    psychomotor retardation, an appearance of being guarded and preoccupied, as well as an irritable

9    mood and a blunted affect. *Id*. at 591. She also noted that Plaintiff exhibited signs of a formal

10   thought disorder and symptoms commensurate with depression and that Plaintiff "will benefit

11   from psychiatric medications and counseling." *Id*. at 591-92. Diagnosing Plaintiff with a psychotic

12   disorder, Dr. Dixit opined further that Plaintiff will need a medical evaluation by a psychiatrist. *Id*.

13   The same day, and also at the Pacific Health Clinic, Plaintiff was evaluated by Farah Rana, M.D.,

14   a neurologist and internal medicine specialist. *Id*. at 594-96. While Dr. Rana's report largely

15   describes the details pertaining to her physical examination, her ultimate diagnostic impression

16   was that "[t]here is a high probability of posttraumatic stress disorder." *Id*. at 596.

17        **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

18        A person filing a claim for social security disability benefits ("the claimant") must show

19   that he has the "inability to do any substantial gainful activity by reason of any medically

20   determinable physical or mental impairment" which has lasted or is expected to last for twelve or

21   more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in

22   the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-

23   step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

24   416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

25   the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

26        Here, the ALJ set forth the applicable law under the required five-step sequential

27   evaluation process. *AR* at 17-19. At Step One, the claimant bears the burden of showing he has not

28   been engaged in "substantial gainful activity" since the alleged date the claimant became disabled.

United States District Court
Northern District of California

*See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* at 19. At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: "a depressive disorder, a borderline cognitive disorder, and a polysubstance abuse disorder." *AR* at 19. Additionally, the ALJ found that "the evidence does not establishes (sic) a medically determinable mental impairment of a psychotic disorder, schizophrenia, or a post-traumatic stress disorder." *Id*.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments. *AR* at 19-20. Next, the ALJ determined that Plaintiff retained the RFC to perform the full range of work at all exertional levels but involving only simple and routine tasks, and that only require him to make simple work-related decisions and to only occasionally require him to respond appropriately to co-workers and the public. *Id*. at 20-27.

At Step Four, the ALJ determined that Plaintiff is unable to perform his past relevant work because he has no past relevant work. *Id*. at 27. Lastly, at Step Five, the ALJ concluded that based on the RFC, Plaintiff's age, education, and work experience, that there are jobs that exist in significant numbers in which Plaintiff can still perform – namely, the ALJ found that Plaintiff could perform the functions of machine feeder, vehicle cleaner, or a laundry worker II. *Id*. at 27-

United States District Court
Northern District of California

1   28. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the

2   Social Security Act, from March 25, 2015, through the date of the issuance of the ALJ's decision,

3   December 7, 2017. *Id*. at 28.

4                                   **DISCUSSION**

5          Plaintiff raises a number of issues, but contends in pertinent part that the ALJ erred at Step

6   Two in concluding that Plaintiff's diagnoses of posttraumatic stress disorder and psychotic

7   disorder were not medically determined. *See* Pl.'s Mot. (dkt. 18) at 21-25. By way of response,

8   while Defendant does not specifically discuss Step Two, or the fact that the ALJ found that

9   diagnoses rendered by acceptable medical sources who had examined Plaintiff were not medically

10  determined – nevertheless, Defendant contends that Plaintiff's history of paranoia and

11  hallucinations were self-reported and therefore due to be disregarded. *See* Def.'s Mot. (dkt. 24) at

12  4-6. Regarding Dr. Rana's diagnostic impression to the effect that "there is a high probability of

13  posttraumatic stress disorder," Defendant made no mention of this diagnosis or of the ALJ's

14  rejection of it. *See generally id*. The explanation provided by the ALJ for concluding that

15  Plaintiff's PTSD and psychotic disorder were "non-medically determinable" was because the ALJ

16  assumed that Dr. Dixit and Dr. Rana simply rendered those diagnoses on a basis "that hinges on

17  the claimant's self-reported symptoms alone, or on the claimant's allegations regarding

18  symptomatology." *AR* at 19.

19         At Step Two of the sequential evaluation process, the ALJ must determine if a claimant

20  has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§

21  404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2015); *see also Smolen v. Chater*, 80 F.3d 1273, 1289-90

22  (9th Cir. 1996) (internal citation omitted). Impairments must result "from anatomical,

23  physiological, or psychological abnormalities which can be shown by medically acceptable

24  clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). A medically

25  determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or

26  mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c),

27  416.920(a)(4)(iii) & (c); see also SSR 96-3p, 1996 SSR LEXIS 10, 1996 WL 374181 *1. Basic

28  work activities are those "abilities and aptitudes necessary to do most jobs," including, for

United States District Court
Northern District of California

7

example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 SSR LEXIS 19, 1985 WL 56856 *3. The Step Two inquiry, however, is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see also Smolen*, 80 F.3d at 1290 (noting the Step Two determination is a *de minimis* screening device used to dispose of groundless claims). For this reason, "[a]mple authority cautions against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *see also Webb*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id*.

When evaluating a disability application in which a plaintiff claims a mental impairment, the ALJ is required to follow a "special technique" at Steps Two and Three. 20 C.F.R. § 416.920a(a). At Step Two, the ALJ must first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" in order to determine the existence of one or more "medically determinable mental impairment(s)." 20 C.F.R. § 416.920a(b)(1); *see also Keyser v. Comm'r SSA*, 648 F.3d 721, 725 (9th Cir. 2011) (interpreting 20 C.F.R. § 404.1520a, the parallel, and identically worded, regulation under Title II). Second, the ALJ must then rate "the degree of functional limitation" caused by the mental impairments just identified, in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(b)(2) & (c)(1)-(3); *Keyser*, 648 F.3d at 725. The degrees can be "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 416.920a(c)(4). Episodes of decompensation – being numeric, or episodic, in nature – are ranked as, "none," "one or two," "three," and "four or more." *Id*. Third, the ALJ must next determine the severity of the mental impairment, "in part based on the degree of functional limitation." 20 C.F.R. § 416.920a(d);

United States District Court
Northern District of California

*Keyser*, 648 F.3d at 725. The ALJ then proceeds to Step Three only if the mental impairment is "severe." *Keyser*, 648 F.3d at 725. At Step Three, the ALJ is tasked with determining if the one or more severe mental impairments identified in Step Two meets or equals the severity of the relevant mental impairment or impairments in the Listings. 20 C.F.R. § 416.920a(d)(2); *Keyser*, 648 F.3d at 725.

Here, at Step Two, with little to no discussion, the ALJ found the evidence did not establish the existence of PTSD or a psychotic disorder because of the ALJ's conclusion that Drs. Dixit and Rana simply relied on Plaintiff's self-reported symptoms alone in rendering these diagnoses. *See AR* at 19. Instead of making such an unwarranted assumption, the ALJ was required to evaluate Plaintiff's "pertinent symptoms, signs, and laboratory findings" to determine whether he has "a medically determinable mental impairment[]," in this case, PTSD and a psychotic disorder. *See* 20 C.F.R. § 416.920a(b)(1); *Keyser*, 648 F.3d at 725. The court finds that the ALJ erred in identifying these conditions as not medically determined. First, aside from the fact that the ALJ failed to evaluate Plaintiff's signs, symptoms, and laboratory findings, the court will note that each of the three examining doctors here evaluated Plaintiff in a clinical setting and performed mental status examinations. Dr. Kalich administered the BDI-II and determined that Plaintiff's severe and recurrent major depressive disorder was attended with psychotic features. Dr. Dixit (whose opinion the ALJ claimed to have given significant weight) reviewed Dr. Kalich's report and then performed her own clinical interview and mental status examination before diagnosing Plaintiff with a psychotic disorder. Also, Dr. Rana, who is a medical doctor and a neurologist, likewise evaluated Plaintiff in a clinical setting before noting her diagnostic impression to the effect that there is a high probability that Plaintiff suffers from posttraumatic stress disorder. Given Plaintiff's history of trauma and abuse, combined with his history of hallucinations and paranoia, the relatively consistent diagnoses of these three doctors as to Plaintiff's mental state is unsurprising. Thus, the court finds that the ALJ's Step Two determination in this regard was not based on substantial evidence, and that the ALJ's Step Two errors were not harmless because they infected the remainder of the sequential evaluation process in that: (1) two severe mental impairments, of which there was substantial evidence in the record,

9

1  were omitted from the ALJ's Step Three analysis entirely; and, (2) Plaintiff's significant and

2  potentially disabling limitations pertaining to his paranoia, his psychotic symptoms, and his

3  auditory hallucinations were not taken into account at all in formulating the RFC or at Step Five.

4      The court will also note that the record in this case was poorly developed. It is well

5  established that "[t]he ALJ in a social security case has an independent 'duty to fully and fairly

6  develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v.*

7  *Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (*quoting Smolen*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

8  In other words, because these administrative proceedings are inquisitorial in nature, the ALJ

9  should not sit back and take the role of a mere umpire during disability proceedings; instead, the

10  ALJ must scrupulously and conscientiously probe into the matter and actively explore for any and

11  all relevant facts. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing *Higbee v.*

12  *Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). Thus, if there is any ambiguity in the evidence, or if

13  the ALJ – or a reviewing court – finds that the record is inadequate for proper evaluation of the

14  evidence, such a finding likewise triggers the ALJ's duty to conduct an appropriate inquiry. *See*

15  *Tonapetyan*, 242 F.3d at 1151 (citing *Smolen*, 80 F.3d at 1288). The existence of this duty to

16  develop the record on the ALJ's part does not depend on a claimant's representation status and the

17  duty applies with equal force in the cases of the represented as well as the unrepresented claimant.

18  *Tonapetyan* at 1150. However, in cases where the claimant may be mentally ill and unable to

19  protect his or her own interests, the duty is heightened. *Id.* (citing *Higbee*, 975 F.2d at 562); *see*

20  *also DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1990) ("In cases of mental impairments,

21  this duty [to develop the record] is especially important."); *Jones v. Bowen*, 829 F.2d 524, 526 (5th

22  Cir. 1987) (a claimant need only "raise a suspicion" about his or her impairment in order to trigger

23  the ALJ's duty to develop the record).

24      As discussed above, Plaintiff raised much more than a mere suspicion concerning his

25  psychotic symptoms, his auditory hallucinations, his paranoia, his PTSD, his suicidal ideations, his

26  violent ideations (i.e., his potential for being a danger to those who tease or bully him), and (as Dr.

27  Dixit put it) his need for psychiatric medications. "One of the means available to an ALJ to

28  supplement an inadequate medical record is to order a consultative examination, i.e., 'a physical or

United States District Court
Northern District of California

mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense.'" *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1519, 416.919). While "[t]he government is not required to bear the expense of an examination for every claimant," consultative examinations are normally required when additional evidence is needed or when there is an "ambiguity or insufficiency in the evidence [that] must be resolved." *Id*. at 842 (citing 20 C.F.R. §§ 404.1517-19). The court finds that to be the case here; therefore, on remand the ALJ is instructed to procure a suitable consultative examination by a licensed psychiatrist such as to properly develop the record as to Plaintiff's psychiatric condition.

### CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 18) is **GRANTED**, and Defendant's Motion for Summary Judgment (dkt. 24) is **DENIED**. The case is **REMANDED** for further proceedings consistent with the instructions provided herein. Additionally, on remand, the ALJ is instructed to consider the other issues raised in Plaintiff's briefing and to modify the opinion as appropriate. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017).

**IT IS SO ORDERED.**

Dated: May 26, 2020

ROBERT M. ILLMAN
United States Magistrate Judge